# STATE OF CONNECTICUT *v.* PATRICK WRIGHT
## (SC 17239)

Sullivan, C. J., and Katz, Palmer, Vertefeuille and Zarella, Js.

Argued January 5—officially released April 19, 2005

*Auden Grogins*, special public defender, for the appellant (defendant).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan*, state's attorney, and *Anthony Bochicchio*, assistant state's attorney, for the appellee (state).

*Opinion*

ZARELLA, J. A jury found the defendant, Patrick Wright, guilty of one count of criminal violation of a protective order in violation of General Statutes (Rev. to 1999) § 53a-110b, as amended by Public Acts 1999, No. 99-240, § 4 (P.A. 99-240).[1] The trial court rendered judgment in accordance with the jury verdict, and the defendant appealed,[2] claiming that he was deprived of: (1) his right to present a defense, as guaranteed by the sixth and fourteenth amendments to the United States constitution, when the court precluded him from introducing evidence that would have established that the protective order was invalid; (2) his due process right to a fair trial by virtue of the trial court's failure to require the state to prove the validity of the order as an element of the offense; and (3) his right to counsel

[1] General Statutes (Rev. to 1999) § 53a-110b, as amended by P.A. 99-240, § 4, provides in relevant part: "(a) A person is guilty of criminal violation of a protective order when an order issued pursuant to subsection (e) of section 46b-38c . . . has been issued against such person, and such person violates such order. . . ."

Section 53a-110b is now codified as amended at General Statutes § 53a-223. All references throughout this opinion to § 53a-110b are to the 1999 revision as amended by P.A. 99-240, § 4.

[2] The defendant appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

under the sixth and fourteenth amendments to the United States constitution because he appeared at the protective order hearing without appointed counsel. We reject each of these claims and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In November, 2000, the defendant resided in an apartment at 11 East Pearl Street in Danbury with his girlfriend, Sharon Wilson, and the couple's three minor children. The victim, Judith Malcolm, who is Wilson's sister, stayed at the apartment from time to time while she was visiting Wilson. On November 9, 2000, during one of these visits, the defendant physically assaulted Malcolm while the two were engaged in an argument. The police were called to the apartment, and the defendant was arrested and charged with assault in the third degree in violation of General Statutes § 53a-61 and disorderly conduct in violation of General Statutes (Rev. to 1999) § 53a-182. The defendant was arraigned on those charges on November 13, 2000, and, as a condition of his release, a protective order was issued against him pursuant to General Statutes (Rev. to 1999) § 46b-38c.[3] Although the defendant was not represented by

---

[3] General Statutes (Rev. to 1999) § 46b-38c provides in relevant part: "(d) In all cases of family violence . . . [a] judge of the Superior Court may consider and impose the following conditions to protect the parties, including but not limited to: (1) Issuance of a protective order pursuant to subsection (e) . . . .

"(e) A protective order issued under this section may include provisions necessary to protect the victim from threats, harassment, injury or intimidation by the defendant, including but not limited to, an order enjoining the defendant from (1) imposing any restraint upon the person or liberty of the victim; (2) threatening, harassing, assaulting, molesting or sexually assaulting the victim; or (3) entering the family dwelling or the dwelling of the victim. . . ."

For the purposes of § 46b-38c, "family violence" is defined as "an incident resulting in physical harm, bodily injury or assault, or an act of threatened violence . . . between *family or household members*." (Emphasis added.) General Statutes (Rev. to 1999) § 46b-38a (1).

A " '[f]amily or household member' means (A) spouses, former spouses; (B) parents and their children; (C) persons eighteen years of age or older

counsel at the November 13, 2000 hearing, the presiding judge, *Carroll, J.*, explained to the defendant that the protective order barred him from threatening or assaulting Malcolm, having contact with her and entering the apartment at 11 East Pearl Street. The judge further advised the defendant that the protective order would remain in effect while his case was pending or until it was modified by the court, and that any violation of the order would constitute a separate criminal offense.[4] The defendant represented to the court that he understood the terms and conditions of the order.

On November 26, 2000, the defendant, who was accompanied by Wilson, entered the East Pearl Street apartment to collect some of his personal papers. Malcolm, who was in the apartment at the time, summoned police officers to the apartment, and they arrested the defendant for violating a protective order in contraven-

related by blood or marriage; (D) persons sixteen years of age or older other than those persons in subparagraph (C) presently residing together or who have resided together; and (E) persons who have a child in common regardless of whether they are or have been married or have lived together at any time." (Emphasis added.) General Statutes (Rev. to 1999) § 46b-38a (2).

All references throughout this opinion to § 46b-38c are to the 1999 revision.

[4] The protective order described the conduct that the defendant was to refrain from, including his entry into the East Pearl Street apartment. The protective order contained the following additional language mandated by § 46b-38c (e): "This protective order is made a condition of the bail or release of the defendant and, in accordance with . . . § 53a-110b, any violation of this order constitutes criminal violation of a protective order. Additionally, in accordance with [General Statutes] § 53a-107, entering or remaining in a building or any other premises in violation of this order constitutes criminal trespass in the first degree. These are criminal offenses each punishable by a term of imprisonment not more than one year, a fine of not more than two thousand dollars, or both. Violation of this order also violates a condition of your bail or release, and may result in raising the amount of bail or revoking release.

\* \* \*

"This protective order is to remain in effect until final disposition of the criminal case or until further order of the court."

tion of § 53a-110b (a) and interfering with a police officer in violation of General Statutes (Rev. to 1999) § 53a-167a. At the commencement of trial on those charges, the court, *White, J.*, held an evidentiary hearing to determine, inter alia, whether the defendant would be allowed to introduce evidence to show that Malcolm was not a member of his family or household and, consequently, that she did not qualify for a protective order under § 46b-38c (e). See footnote 3 of this opinion. The defendant contended that such evidence was crucial to his defense, namely, that he could not be found guilty of violating an invalid protective order. In response to that argument, the assistant state's attorney maintained that the defendant could not collaterally attack the protective order in the present proceeding. The trial court agreed with the assistant state's attorney, ruling that the evidence proffered by the defendant was inadmissible because the validity of the order was not relevant to any issue in the trial.

During the state's case-in-chief, the assistant state's attorney called Linda Piascik, a family relations officer, to testify as to the existence and conditions of the protective order. Despite the court's earlier ruling, defense counsel sought to cross-examine Piascik regarding her conclusions that the case involved a matter of family violence and that a protective order could be issued under § 46b-38c (e) even though the defendant and Malcolm did not reside together in the East Pearl Street apartment. The court sustained the objections of the assistant state's attorney to those questions. Thereafter, during the defendant's case-in-chief, Wilson testified that Malcolm did not reside in the East Pearl Street apartment, but merely had visited there occasionally. At that point, the trial court intervened and admonished defense counsel for engaging in a line of inquiry that was barred by its earlier ruling.

The defendant also testified at trial that, at the time of his altercation with Malcolm, he was residing in the East Pearl Street apartment with Wilson and their children. Upon cross-examination by the state, the defendant acknowledged that Judge Carroll had explained the terms of the protective order to him. He testified, however, that the order simply was not "on [his] mind" when he entered the apartment on November 26, 2000.

In its instructions to the jury, the court explained that, to find the defendant guilty of criminal violation of a protective order, the jury must find that the state has proven the following elements beyond a reasonable doubt: "(1) that an order issued pursuant to subsection (e) of [§] 46b-38c had been issued against the defendant; and (2) that the defendant [had] violated that order." The court further instructed the jury that the validity of the protective order was not an issue for the jury to consider, and that it must assume that the order was "validly issued."

The jury found the defendant not guilty of interfering with a police officer but found him guilty of criminal violation of a protective order. This appeal followed.

I

The defendant first claims that he was deprived of his right to present a defense, as secured by the sixth and fourteenth amendments to the United States constitution,[5] when the trial court precluded him from intro-

---

[5] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . [and] to have compulsory process for obtaining witnesses in his favor . . . ."

The fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

A defendant's right to present a defense is rooted in the compulsory process and confrontation clauses of the sixth amendment and the due process clauses of the fifth and fourteenth amendments. See, e.g., *Crane* v. *Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986). Furthermore, the sixth amendment rights to confrontation and to compulsory pro-

ducing evidence that would have established that the protective order was invalid. In particular, the defendant renews his claim, which he made at the evidentiary hearing before, *White, J.*, that such evidence was crucial to his defense because, in his view, a person may not be convicted of violating an invalid protective order. The state responds that the invalidity of the protective order does not constitute a legitimate defense to the charged crime, and, therefore, the court's exclusion of the proffered evidence did not deprive the defendant of his constitutional right to present a defense. We agree with the state.

We begin our analysis with a review of the governing legal principles. The sixth amendment to the United States constitution "require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense. . . . The defendant's sixth amendment right, however, does not require the trial court to forgo completely restraints on the admissibility of evidence. . . . Generally, [a defendant] must comply with established rules of procedure and evidence in exercising his right to present a defense. . . . A defendant, therefore, may introduce only relevant evidence,[6] and, if the proffered evidence is not relevant, its exclusion is proper and the defendant's right is not violated." (Citations omitted; internal quotation marks omitted.) *State v. Cerreta*, 260 Conn. 251, 260–61, 796 A.2d 1176 (2002). Finally, "[t]he determination of whether a matter is relevant to a material issue [in the proceeding] . . .

cess are made applicable to state prosecutions through the due process clause of the fourteenth amendment. *Pointer* v. *Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965) (right to confrontation); see *Washington* v. *Texas*, 388 U.S. 14, 18, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967) (right to compulsory process).

[6] " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." Conn. Code Evid. § 4-1.

rests within the sound discretion of the trial court." *State* v. *Valentine*, 240 Conn. 395, 403, 692 A.2d 727 (1997).

General Statutes (Rev. to 1999) § 53a-110b, as amended by P.A. 99-240, § 4, provides in relevant part: "(a) A person is guilty of criminal violation of a protective order when an order issued pursuant to subsection (e) of section 46b-38c . . . has been issued against such person, and such person violates such order. . . ." We note that the statute itself does not provide that the validity of the underlying order is a necessary element of that offense. Notwithstanding that observation, we must determine whether the invalidity of a protective order is a cognizable defense under the law and, thus, relevant to a material issue in the proceeding. That inquiry is guided by our analysis in *Cologne* v. *Westfarms Associates*, 197 Conn. 141, 496 A.2d 476 (1985).

In *Cologne*, we rejected the claim of the defendants that a judgment of civil contempt must be reversed when the injunction on which the contempt was based had been issued erroneously.[7] Id., 147–48. In reaching that result, we stated that an order issued by a court of competent jurisdiction "must be obeyed by the parties until it is reversed by orderly and proper proceedings." (Internal quotation marks omitted.) Id. We explained that a party has a duty to obey a court order "however erroneous the action of the court may be . . . ." (Internal quotation marks omitted.) Id. Consistent with that conclusion, we noted that "a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed"; id., 148; and we reiterated that "there is no privilege to disobey a court's order because the alleged

---

[7] Although we rejected the defendants' claim on that ground, we nevertheless reversed the judgment of contempt because it was not supported by competent evidence. See *Cologne* v. *Westfarms Associates*, supra, 197 Conn. 156.

contemnor believes that it is invalid." Id. In addition, we observed that this doctrine, which is commonly known as the collateral bar rule, is justified on the ground that it advances important societal interests in an orderly system of government, respect for the judicial process and the rule of law, and the preservation of civil order. See id., 147–48.

Although *Cologne* involved a civil contempt proceeding, the collateral bar rule also applies when a defendant seeks to attack the validity of a court order in a criminal proceeding. See, e.g., *Walker* v. *Birmingham*, 388 U.S. 307, 312, 315, 87 S. Ct. 1824, 18 L. Ed. 2d 1210 (1967) (criminal contempt); *Jacko* v. *State*, 981 P.2d 1075, 1076–77 (Alaska App. 1999) (criminal violation of protective order). Our endorsement of that rule in *Cologne* leads us to conclude that the defendant in the present case should not be allowed to challenge the validity of the protective order that he was charged with violating under § 53a-110b (a). That order was issued by a court of competent jurisdiction as a condition of the defendant's release in connection with the assault and disorderly conduct charges stemming from his altercation with Malcolm. Thus, the defendant had no privilege to violate that order. If the defendant believed that the order did not comport with the statutory requirements of § 46b-38c (e), he had two lawful remedies available to him. He could have: (1) sought to have the order modified or vacated by a judge of the Superior Court pursuant to Practice Book § 38-13;[8] or (2) appealed the terms of the order to the Appellate Court in accordance with General Statutes § 54-63g.[9] Having failed to pursue

[8] Practice Book § 38-13 provides in relevant part: "The judicial authority shall have the power to modify or revoke at any time the terms and conditions of release . . . ."

[9] General Statutes § 54-63g provides in relevant part: "Any accused person . . . aggrieved by an order of the Superior Court concerning release, may petition the Appellate Court for review of such order. Any such petition shall have precedence over any other matter before said Appellate Court and any hearing shall be heard expeditiously with reasonable notice."

either remedy, the defendant may not seek to avoid his conviction for violating that order by challenging the factual basis of its issuance.

The defendant directs our attention to a decision of the Washington Court of Appeals, namely, *State* v. *Marking*, 100 Wash. App. 506, 997 P.2d 461, review denied, 141 Wash. 2d 1026, 11 P.3d 825 (2000), to show that the invalidity of a protective order is indeed a cognizable defense to his crime. The defendant in *Marking*, Joseph C. Marking, was convicted of violating a no contact order that did not contain the mandatory statutory notice that "consent [of the victim] is not a defense to violation of such order." Id., 508. In reversing Marking's conviction, the court explained that, under Washington law, "[t]he validity of a protective order is an *implicit* element of the crime of violation of such order . . . [and therefore] the [s]tate bore the burden at trial of proving the validity of the order beyond a reasonable doubt." (Citation omitted; emphasis added.) Id., 509. Thus, the court rejected the collateral bar rule under the facts of that case and concluded that Marking's attack on the merits of the order constituted a permissible defense. See id.

Even if the Washington courts would allow the defendant to assert his proffered defense under the circumstances of this case,[10] that does not mean that we are

---

[10] The Washington Court of Appeals subsequently has adopted a narrow reading of its holding in *Marking*. For example, in *State* v. *Snapp*, 119 Wash. App. 614, 82 P.3d 252, review denied, 152 Wash. 2d 1028, 101 P.3d 110 (2004), the court explained that "*Marking* addressed only whether Marking knowingly violated a no-contact order issued under [Washington law] when he acceded to his wife's request that the two meet at her workplace and the no-contact order did not contain the mandatory consent warning . . . ." Id., 624. The court further explained that *Marking* does "not require the [s]tate to anticipate any possible unspoken challenge to the validity of a protective order and to prove the validity of the order to the jury beyond a reasonable doubt. Nor does every defect render a no-contact order invalid . . . ." Id., citing *State* v. *Sutherland*, 114 Wash. App. 133, 136, 56 P.3d 613 (2002) (order was not invalid merely because it contained error in citation to governing statute), review denied, 149 Wash. 2d 1034, 75 P.3d 969 (2003).

bound to adopt the same rule of law in Connecticut. Rather, in our view, the collateral bar rule is the preferable doctrine because it advances important, overarching policy interests as articulated in *Cologne* v. *Westfarms Associates*, supra, 197 Conn. 147–48. Moreover, we are persuaded that its application is particularly compelling in the circumstances of the present case because it also furthers the state's specific interest in shielding persons from physical abuse. Indeed, several other courts have reached the same conclusion in cases involving family protective orders. See, e.g., *United States* v. *Hicks*, 389 F.3d 514, 534–36 (5th Cir. 2004) (upholding defendant's conviction for possession of firearms while being subject to domestic restraining order and ruling that collateral attack on that order was impermissible); *Jacko* v. *State*, supra, 981 P.2d 1076 (holding that defendant could not rely on fact that family protective order was invalid as ground for dismissal of charge of violating that order); *State* v. *Grindling*, 96 Haw. 402, 405–406, 31 P.3d 915 (2001) (holding that it was impermissible for defendant to attack collaterally underlying basis of protective order); *State* v. *Small*, 150 N.H. 457, 461, 843 A.2d 932 (2004) (same).

The defendant argues alternatively that his case falls within an exception to the collateral bar rule pertaining to orders that are "transparently invalid." He claims that the protective order in the present case satisfies the requirements of that exception because "it was erroneously issued to a victim who did not qualify for . . . protection under [§ 46b-38c]." We are not persuaded.

The transparently invalid order exception traces its origin to dictum appearing in *Walker* v. *Birmingham*, supra, 388 U.S. 315, in which the court upheld criminal contempt convictions of persons who had marched in support of civil rights in violation of an injunction prohibiting mass street parades without a permit. Id., 321. Although the United States Supreme Court never has

articulated the contours of that exception, the First Circuit Court of Appeals recognized and elaborated on it in *In re Application to Adjudge the Providence Journal Co. in Criminal Contempt*, 820 F.2d 1342 (1st Cir. 1986) (*In re Providence Journal Co. I*), modified, 820 F.2d 1354 (1st Cir. 1987), cert. dismissed sub nom. *United States* v. *Providence Journal Co.*, 485 U.S. 693, 108 S. Ct. 1502, 99 L. Ed. 2d 785 (1988). In that case, the Court of Appeals concluded that an order should be considered transparently invalid only in those rare cases in which "the order . . . had [no] pretense to validity at the time it was issued . . . ." Id., 1347. The Court of Appeals further explained that the exception is premised on the view that a court issuing a transparently invalid order "is acting so far in excess of its authority that it has no right to expect compliance and no interest is protected by requiring compliance." Id. Other courts have followed the lead of *In re Providence Journal Co. I* in construing the transparently invalid order exception stringently. See, e.g., *In re Novak*, 932 F.2d 1397, 1403 (11th Cir. 1991) ("[o]nly when there is no colorable, nonfrivolous argument to support the order being reviewed should a contemnor be excused from his disobedience of the order"); *In re Special Proceedings*, 291 F. Sup. 2d 44, 50 (D.R.I. 2003) (exception applies only "in those extremely rare cases [in which] the order . . . had [no] pretense of validity at the time it was issued" [citations omitted; internal quotation marks omitted]), aff'd, 373 F.3d 37 (1st Cir. 2004); *Jacko* v. *State*, supra, 981 P.2d 1078–79 (exception applies only when subject matter or general purpose of order is clearly improper).

The defendant does not deny that the state has a valid interest in protecting persons from physical violence, nor does he suggest that the protective order was issued for an improper purpose. Rather, he contends that the order is "transparently invalid" solely

because it was based on the erroneous factual assumption that the defendant and Malcolm were residing in the same dwelling, thereby rendering it defective under § 46b-38c (e). We note, however, that, despite this alleged mistake of fact, the court could have imposed the same conditions on the defendant's release pursuant to the general authority vested in it by General Statutes § 54-64a. That statute affords a Superior Court judge broad discretion in fixing nonfinancial conditions of a defendant's release for the purpose of ensuring, inter alia, the safety of others, including restrictions on entering a specific place of abode and on having contact with an alleged victim of the crime with which the defendant has been charged. See General Statutes § 54-64a (c). Thus, this is not a case in which the court was "acting so far in excess of its authority that it [had] no right to expect compliance . . . ." *In re Providence Journal Co. I*, supra, 820 F.2d 1347. Moreover, even if we were to assume, arguendo, that the protective order at issue in the present case somehow is transparently invalid, the defendant's argument would still fail because the exception applies only when a defendant can show compelling circumstances, such as the need to act immediately, that excuse his decision not to seek or to await emergency relief from a reviewing court. *In re Application to Adjudge the Providence Journal Co. in Criminal Contempt*, 820 F.2d 1354, 1355 (1st Cir. 1987) (*In re Providence Journal Co. II*), cert. dismissed sub nom. *United States* v. *Providence Journal Co.*, 485 U.S. 693, 108 S. Ct. 1502, 99 L. Ed. 2d 785 (1988); see also *United States* v. *Cutler*, 58 F.3d 825, 832 (2d Cir. 1995) (to invoke exception, "a defendant must make some good faith effort to seek emergency relief from the appellate court . . . or show compelling circumstances, such as a need to act immediately, excusing the decision not to seek some kind of emergency relief"

[citations omitted; internal quotation marks omitted]). The defendant cannot satisfy that prerequisite.[11]

For the foregoing reasons, we conclude that the defendant was not denied his constitutional right to present a defense when he was precluded from introducing evidence concerning the alleged invalidity of the protective order.

## II

The defendant's second claim is essentially a variation on the theme advanced in his first argument. Relying again on *State* v. *Marking*, supra, 100 Wash. App. 506, the defendant contends that the validity of the order that he was charged with violating is an implicit element of the offense of criminal violation of a protective order. He therefore argues that the trial court's failure to require the state to prove the validity of the order beyond a reasonable doubt deprived him of his due process right to a fair trial.

Although we agree with the defendant that it is fundamental to due process jurisprudence that the state must prove each element of the charged offense beyond a reasonable doubt; *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); we do not agree that that principle was violated in the present case. We

---

[11] We note that the federal courts also recognize three other situations in which the collateral bar rule is inapplicable, none of which are involved in the present case: "First, if the issuing court lacks subject-matter jurisdiction over the underlying controversy or personal jurisdiction over the parties to it, its order may be violated with impunity. . . . In such a case, the original order is deemed a nullity, and the accused contemnor cannot be fairly punished for violating nothing at all. . . . Second, the collateral bar rule presupposes that adequate and effective remedies exist for orderly review of the challenged ruling; in the absence of such an opportunity for review, the accused contemnor may challenge the validity of the disobeyed order on appeal from his criminal contempt conviction and escape punishment if that order is deemed invalid. . . . Third, the order must not require an irretrievable surrender of constitutional guarantees." (Citations omitted; internal quotation marks omitted.) *In re Novak*, supra, 932 F.2d 1401.

noted in part I of this opinion that the legislature, in defining the offense of criminal violation of a protective order, did not expressly make the validity of the underlying order an element of that offense. Rather, the statute merely requires the issuance of a protective order against the defendant pursuant to § 46b-38c (e), among other provisions, and the defendant's violation of that order. See General Statutes (Rev. to 1999) § 53a-110b, as amended by P.A. 99-240, § 4. We decline to interpret § 53a-110b to require that the validity of the order be an implicit element of that offense; see *State* v. *Marking*, supra, 100 Wash. App. 509; because such a construction would undermine the same policy interests that justify our endorsement of the collateral bar rule in part I. We therefore conclude that the defendant was not deprived of his due process right to a fair trial by virtue of the trial court's failure to require the state to prove the validity of the order beyond a reasonable doubt.[12]

### III

The defendant's final claim is that he was deprived of his right to counsel under the sixth and fourteenth amendments to the United States constitution[13] when he appeared at the protective order hearing without an

---

[12] The defendant asserts that the Appellate Court's decision in *State* v. *Arluk*, 75 Conn. App. 181, 815 A.2d 694 (2003), somehow supports his second claim. The defendant in *Arluk*, Mariano Arluk, contended that "the court improperly [had] relieved the state of its burden of proving one of the elements of the crime of violation of a protective order, namely, the existence of a valid . . . order." Id., 191. Although the defendant's second claim mirrors that advanced by Arluk, the Appellate Court did not decide the issue because it concluded that Arluk had waived his claim at trial. Id., 193. The Appellate Court's decision in *Arluk*, therefore, is not instructive in the present case.

[13] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."

The sixth amendment right to counsel is made applicable to the states through the due process clause of the fourteenth amendment. See *Gideon* v. *Wainwright*, 372 U.S. 335, 342, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963).

attorney. He contends that the presence of an attorney at that hearing would have prevented the court from issuing the invalid order in the first place. Building on that assumption, the defendant claims that the protective order hearing was a critical stage of the criminal proceedings that culminated in his conviction, and, therefore, he had a right to counsel at that hearing.

The defendant concedes that his claim was not preserved in the proceedings below and seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We nonetheless conclude that the defendant's right to counsel claim simply amounts to another impermissible collateral attack on the protective order that he was convicted of violating. See *Cologne* v. *Westfarms Associates*, supra, 197 Conn. 147–48. The fact that this claim is couched in constitutional principles does not render it exempt from the collateral bar rule. That doctrine applies not only when a defendant challenges an order on the basis of factual error but also when he contends that the order is invalid because its issuance does not comport with constitutional law. E.g., *In re Establishment Inspection of Hern Iron Works, Inc.*, 881 F.2d 722, 725 (9th Cir. 1989) ("[t]he collateral bar rule permits a judicial order to be enforced through criminal contempt even though the underlying order may be incorrect and even unconstitutional"); *In re Providence Journal Co. I*, supra, 820 F.2d 1346 ("[a]s a general rule, a party may not violate an order and raise the issue of its unconstitutionality collaterally as a defense in the criminal contempt proceeding"); see *Walker* v. *Birmingham*, supra, 388 U.S. 307 (applying collateral bar rule to preclude challenge to injunction even though "the Birmingham parade ordinance upon which the injunction was based would unquestionably raise substantial constitutional issues"); see also *United States* v. *United Mine Workers of America*, 330 U.S. 258, 293, 67 S. Ct. 677, 91 L. Ed.

884 (1947) ("[A]n order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings. This is true without regard even for the constitutionality of the [a]ct under which the order is issued."). We therefore reject the defendant's third claim for the reasons set forth in part I of this opinion.

The judgment is affirmed.

In this opinion the other justices concurred.