STATE OF CONNECTICUT *v.* STEVEN MANNS
(AC 24643)

DiPentima, Harper and McDonald, Js.

Argued May 5—officially released October 11, 2005

*Maria A. Cahill*, special public defender, with whom, on the brief, was *Carlos E. Candal*, special public defender, for the appellant (defendant).

*Toni M. Smith-Rosario*, assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Pamela J. Esposito*, assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Steven Manns, appeals from the judgment of conviction, rendered after a jury

trial, of criminal violation of a no contact, standing criminal restraining order under General Statutes § 53a-223a and from the judgments rendered after the trial court found that he had violated his probation pursuant to General Statutes § 53a-32. On appeal, the defendant claims that the court (1) improperly denied his motion to dismiss because the court, at sentencing, (A) improperly issued the order on an offense not listed in General Statutes § 53a-40e, and (B) violated his due process right to be informed of the terms and conditions of the order because the court failed to provide a sufficient explanation of the order at the sentencing hearing and the state failed to provide him with a copy of the order, and (2) improperly denied him the right to confront a witness about a prior bad act. We affirm the judgments of the trial court.

The jury reasonably could have found the following facts. The victim, Latoya Bravo, was a student at Housatonic Community College in Bridgeport when she met the defendant in 2000. She and the defendant dated for nearly one year before the victim ended their relationship because she believed that he was too controlling and thought that he was "very violent." The victim testified that the defendant "did not want [her] to go anywhere. He wanted [her] to stay with him all the time. And he [would] get upset and hit [her]. And he was just violent." She testified that she was afraid of him hitting her and was intimidated by him. After she had ended the relationship, the defendant would follow and verbally harass her as she walked to work, and he would harass her by telephone.

On February 28, 2002, the victim obtained a standing criminal restraining order against the defendant that prohibited him from contacting her in any way. She carried the restraining order with her everywhere she went. Despite the restraining order, the victim would see the defendant riding past her residence, and he

would call her at her residence and on her cellular telephone from various locations. The defendant also continued to follow the victim to various places.

The victim received a telephone call from the defendant on March 11, 2002. After receiving the call on her cellular telephone, which had a caller identification function, she contacted the Bridgeport police department and reported that the defendant was calling her in violation of the restraining order. At that time, Officer Dennis Martinez of the Bridgeport police department was dispatched to the victim's residence. The victim showed Martinez a copy of the restraining order. Martinez wrote on his notepad the telephone number that appeared on the caller identification feature of the victim's telephone and attempted to call the number from the victim's residence, but no one answered. Martinez included the telephone number in his incident report.

The incident report was assigned to Detective Edwin Perez, also of the Bridgeport police department. Perez called the number, and a woman answered and verified that the defendant occasionally stayed there. At that time, Perez prepared a warrant for the defendant's arrest. Perez went by the house, but he did not see the defendant there.

On April 16, 2002, the victim sought assistance from Officer Donald McCollum of the Bridgeport police department. She alleged that the defendant had struck her in the head, had pushed her to the ground and had stolen her cellular telephone. McCollum observed that the victim was upset, disheveled and had scrapes on her elbows and knees.

The defendant was arrested on April 30, 2002, and was charged in a long form information with various offenses under four docket numbers. The defendant was charged with violating a standing criminal restraining order in violation of § 53a-223a by calling

her on her cellular telephone, on or around March 11, 2002. The defendant was charged with five offenses involving in person contact with the victim on April 16, 2002: criminal violation of the no contact, standing criminal restraining order under § 53a-223a; harassment in the second degree in violation of General Statutes § 53a-183 (a) (3); robbery in the third degree in violation of General Statutes § 53a-136 (a); assault in the third degree in violation of General Statutes § 53a-61 (a) (1); and threatening in violation of General Statutes § 53a-62 (a) (1). Additionally, the defendant was charged with two counts of violation of probation in violation of General Statutes § 53a-32, under docket numbers 169792 and 171614.

The defendant filed a motion to dismiss the charges, which the court denied on March 13, 2003. On March 18, 2003, following a trial, the jury found the defendant guilty of criminal violation of a standing criminal restraining order based on his contact with the victim by telephone on March 11, 2002. The court granted the defendant's motion for judgment of acquittal on the robbery charge, and the jury found him not guilty of the remaining four counts relating to the alleged assault of the victim on April 16, 2002. On May 13, 2003, the court found that the defendant had committed two counts of violation of probation. The court sentenced the defendant to a total effective term of twenty-five months incarceration with thirty-five months of special parole. This appeal followed.

I

The defendant first claims that he was deprived of his constitutional right to due process guaranteed under the fifth and fourteenth amendments to the United States constitution because the criminal restraining order, which he was found guilty of violating, was issued improperly because it failed to notify him of the condi-

tions of his release. Specifically, he claims that the court should have granted his motion to dismiss the charge under § 53a-223a because (1) the court, at sentencing, improperly issued the restraining order on an offense not contained in § 53a-40e, and (2) his due process right to be informed of the terms and conditions of the restraining order were violated because the court failed to provide a sufficient explanation of the order at the sentencing hearing, and the state failed to provide him with a copy of the restraining order. We disagree.

A

"We must first consider the standard of review where a claim is made that the court failed to grant a motion to dismiss. Our standard of review of a trial court's . . . conclusions of law in connection with a motion to dismiss is well settled. . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts . . . . Thus, our review of the trial court's ultimate legal conclusion and resulting [denial] of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *State* v. *Vitale*, 76 Conn. App. 1, 14, 818 A.2d 134, cert. denied, 264 Conn. 906, 826 A.2d 178 (2003).

"The sixth amendment to the United States constitution require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense. . . . The defendant's sixth amendment right, however, does not require the trial court to forgo completely restraints on the admissibility of evidence. . . . Generally, [a defendant] must comply with established rules of procedure and evidence in exercising his right to present a defense. . . . A defendant, therefore, may introduce only relevant evidence, and, if the proffered evidence is not relevant, its exclusion is proper and the defendant's right is not violated. . . . Finally, [t]he

determination of whether a matter is relevant to a material issue [in the proceeding] . . . rests within the sound discretion of the trial court. (Citation omitted; internal quotation marks omitted.) *State* v. *Wright*, 273 Conn. 418, 424–25, 870 A.2d 1039 (2005)."

General Statutes § 53a-223a provides in relevant part: "(a) A person is guilty of criminal violation of a standing criminal restraining order when an order issued pursuant to subsection (a) of [General Statutes §] 53a-40e . . . has been issued against such person, and such person violates such order. . . ." We note that the statute itself does not provide that the validity of the underlying order is a necessary element of that offense. See *State* v. *Wright*, supra 273 Conn. 425, (validity of underlying order not element of crime of criminal violation of protective order).

Our Supreme Court recently determined that a defendant was not denied his constitutional right to present a defense when he was precluded from introducing evidence concerning the alleged invalidity of a protective order. Id., 431. The court determined that when a protective order is issued by a court of competent jurisdiction, as a condition of a defendant's release, the defendant has no privilege to violate that order. Id., 426. "If the defendant believed that the order did not comport with the statutory requirements of § 46b-38c (e), he had two lawful remedies available to him. He could have: (1) sought to have the order modified or vacated by a judge of the Superior Court pursuant to Practice Book § 38-13; or (2) appealed the terms of the order to the Appellate Court in accordance with General Statutes § 54-63g." *State* v. *Wright*, supra, 273 Conn. 426. The court concluded that "[h]aving failed to pursue either remedy, the defendant may not seek to avoid his conviction for violating that order by challenging the factual basis of its issuance." Id., 426–27. The court held that the defendant could not attack the validity of the underlying protective order in an appeal from a conviction of having violated that order. Id.

In the present case, the defendant claims that the standing criminal restraining order is invalid because the court issued the order on the file involving assault in the third degree, which is an offense that is not enumerated in General Statutes § 53a-40e. On the basis of our reading of *State* v. *Wright,* supra, 273 Conn. 424–27, we conclude that the defendant may not now challenge the validity of the order on the basis of the facts surrounding its issuance.

B

The defendant next claims that because he had no knowledge of the terms and conditions of the restraining order, there was insufficient evidence to support a conviction of criminal violation of a standing criminal restraining order. We are not persuaded.

The defendant further claims that the court failed to provide actual notice of the terms and conditions of the order during trial and that the state failed to provide a copy of the order to him. For the reasons discussed in part I A, we conclude that the defendant may not challenge the validity of the restraining order on the basis of a claim that he failed to receive adequate notice of the terms of the restraining order during trial and failed to receive a copy of the order. Because notice is a factual element surrounding the issuance of the restraining order, the defendant's claim is essentially a variation on his first claim that the restraining order was invalid. Again, the defendant cannot attack the validity of the underlying protective order in an appeal from a conviction of having violated that order. Id.[1]

---

[1] Even if we assume arguendo that, at this stage in the proceedings, the defendant could raise the issue of whether the order was invalid on the basis of a lack of notice, after reviewing the record, we would conclude that the court provided proper notice of the standing criminal restraining order. The record reflects that at the time the court issued the order, the court addressed the defendant directly regarding his sentence and that the following colloquy occurred:

"The Court: . . . You are to have no contact—I need the victim's name—

"[The Prosecutor]: Latoya . . . Bravo. . . .

## II

The defendant finally claims that the court violated his right under the sixth amendment to the United States constitution to confront and to cross-examine witnesses who testified against him. Specifically, the defendant claims that his sixth amendment rights to present a defense and to confront a witness against him were violated when the court refused to allow him to present evidence that the victim had committed a prior act of misconduct that was indicative of a lack of veracity, namely, that she had been arrested after attempting to cash a counterfeit check at a liquor store and had been charged with attempt to commit larceny in the fourth degree. We do not agree.

As a preliminary matter, we set forth the relevant standard of review. It is well established that the trial court has wide discretion to determine the relevance of evidence and that the court's rulings will not be disturbed absent abuse of that discretion. *State* v. *Vasquez*, 68 Conn. App. 194, 199–200, 792 A.2d 856 (2002). "Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. . . . However, [w]hen defense evidence is excluded, such exclusion may give rise to a claim of denial of the right to present a defense. . . . The proffering party bears the burden of establishing the relevance of the offered testimony." (Citations omitted; internal quotation

"The Court: No contact with Latoya Bravo, none whatsoever. There's a permanent criminal restraining order that I'm issuing. If you violate that, your facing a criminal charge that carries—is it five years?

"[The Prosecutor]: Yes."

At the end of the sentencing, the court again emphasized to the defendant, "No contact with Latoya Bravo, along with a permanent criminal restraining order." After reviewing the record, we conclude that the court expressly stated that it was imposing a permanent criminal restraining order prohibiting the defendant from having any contact with the victim. Accordingly, we conclude that the claim must fail.

marks omitted.) *State* v. *Williams*, 65 Conn. App. 449, 458, 783 A.2d 53, cert. denied, 258 Conn. 927, 783 A.2d 1032 (2001).

"[T]he sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . . This right, however, is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. . . . The trial court, in its discretion, may impose limitations on the scope of cross-examination, as long as the defendant has been permitted sufficient cross-examination to satisfy constitutional requirements. . . . The confrontation clause does not . . . suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination. . . . Only relevant evidence may be elicited and the right to cross-examine is subject to the duty of the court to exclude irrelevant evidence." (Citations omitted; internal quotation marks omitted.) Id., 457–58.

"[A]n important function of cross-examination is the exposure of a witness' motivation [for] testifying. . . . In order to comport with the constitutional standards embodied in the confrontation clause, the trial court must allow a defendant to expose to the jury facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." (Internal quotation marks omitted.) *State* v. *Reynolds*, 264 Conn. 1, 58–59, 836 A.2d 224 (2003), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004); see also *State* v. *Gainey*, 76 Conn. App. 155, 163, 818 A.2d 859 (2003).

"In determining whether a defendant's right of cross-examination has been unduly restricted, we consider the nature of the excluded inquiry, whether the field

of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial. . . . To establish that the court abused its discretion, the defendant bears the burden of demonstrating that the restrictions that the court imposed on the cross-examination were clearly prejudicial. . . . Once we conclude that the court's ruling on the scope of cross-examination is not constitutionally defective, we will apply every reasonable presumption in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Williams*, 81 Conn. App. 1, 24, 838 A.2d 214, cert. denied, 268 Conn. 904, 845 A.2d 409 (2004).

Defense counsel first attempted to introduce evidence of the victim's bad acts to suggest that the victim had lied in her statement to police regarding the April 16, 2002 incident when she indicated that the defendant had assaulted her because he had to go to court the next day. The court excused the jury and heard argument. Defense counsel alleged that it was the victim who had a court date scheduled for April 17, 2002, and that the court appearance concerned an incident in which the victim had tried to cash a counterfeit check at a liquor store on February 8, 2002. The state responded that the victim was in an accelerated pretrial rehabilitation program and explained that the matter was pending and that the victim had not been convicted. Defense counsel argued that it did not matter that the victim had not been convicted because larceny is a prior bad act affecting credibility. The court sustained the prosecution's objection to that line of questioning.

"The right to cross-examine a witness concerning specific acts of misconduct is limited in three distinct ways. First, cross-examination may only extend to specific acts of misconduct other than a felony conviction

if those acts bear a special significance upon the [issue] of veracity . . . . Second, [w]hether to permit cross-examination as to particular acts of misconduct . . . lies largely within the discretion of the trial court. . . . Third, extrinsic evidence of such acts is inadmissible." (Internal quotation marks omitted.) *State* v. *Morgan*, 70 Conn. App. 255, 272–73, 797 A.2d 616, cert. denied, 261 Conn. 919, 806 A.2d 1056 (2002).

"It has long been the rule in Connecticut that extrinsic evidence may not be used to contradict the testimony of a witness with regard to a particular act of misconduct." *State* v. *Horton*, 8 Conn. App. 376, 380, 513 A.2d 168, cert. denied, 201 Conn. 813, 517 A.2d 631 (1986). A witness who has been arrested on a misdemeanor charge that is indicative of a lack of veracity may be asked if she committed the act, but if that witness denies committing the act, the questioner must take the witness' answer and is precluded from offering any proof of the offense. C. Tait, Connecticut Evidence (3d Ed. 2001) § 6.32.3 (a), p. 461.

An inquiry into an act of misconduct that indicates a lack of veracity is permissible but does not necessarily have to be permitted during cross-examination. *State* v. *Roma*, 199 Conn. 110, 116–17, 505 A.2d 717 (1986). "It is generally held that larcenous acts tend to show a lack of veracity." *State* v. *Martin*, 201 Conn. 74, 87, 513 A.2d 116 (1986). "It does not follow, however, that if the acts inquired about are indicative of a lack of veracity, the court must permit the cross-examination. Whether to permit it lies largely within the court's discretion." (Internal quotation marks omitted.) *State* v. *Roma*, supra, 117. "The court is to determine whether the probative value of the evidence outweighs its prejudicial effect." *State* v. *Martin*, supra, 88.

We note that "[e]very reasonable presumption should be made in favor of the correctness of the court's ruling

in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Reeves*, 57 Conn. App. 337, 345, 748 A.2d 357 (2000). Our inquiry, therefore, turns to whether the court abused its discretion in refusing to permit the cross-examination of the victim.

In determining whether the cross-examination would be more probative than prejudicial, the court considered the following facts. The victim had been arrested on a charge of attempt to commit larceny in the fourth degree on February 2, 2002. The victim had never been convicted of that offense. The victim was participating in an accelerated pretrial rehabilitation program because that charge was her first criminal charge.[2] She had not incurred any additional criminal charges after entering the program and was scheduled to complete the program successfully in a month, at which time the charge would be dismissed. Additionally, the victim's misconduct did not relate to the offenses at issue.

Accordingly, after reviewing the record, we conclude that the court was well within its discretion in deciding that probative value of the evidence of the victim's prior misconduct was outweighed by its prejudicial effect. The defendant's claim fails.

The judgments are affirmed.

In this opinion the other judges concurred.

---

[2] A person is not eligible for the accelerated rehabilitation program if she has committed a crime of a serious nature, has a previous criminal conviction, has violated certain motor vehicle laws or has been adjudged a youthful offender within the previous five years. General Statutes § 54-56e.