******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

STATE OF CONNECTICUT *v.* CHERYL J.*
(AC 43233)

Elgo, Cradle and Alexander, Js.

*Syllabus*

Convicted of the crime of criminal violation of a protective order, the defendant appealed to this court. The trial court had issued a protective order against the defendant, which provided that she must, inter alia, stay away from the home of the victim, her former husband, and wherever the victim shall reside. The protective order listed the victim's address as a certain property, which he had obtained through divorce proceedings with the defendant. At the time the court issued the order, the defendant requested further clarification of the order from the court. The court orally advised the defendant to stay away from the residence of the victim, wherever it may be, including the residence listed on the protective order. Thereafter, as the defendant was driving by the property, she noticed a real estate agent's car in the driveway and pulled up to the driveway, telling the agent that she could not list or sell the property because of pending legal proceedings and a court order relating to the property. The agent notified the victim of this interaction. *Held*:

1. The defendant could not prevail on her claim that the evidence was insufficient to prove that she had the requisite intent to be convicted of criminal violation of a protective order, as that crime is not a specific intent crime; the state was not required to prove that the defendant specifically intended to violate a condition of the protective order, only that she intended to perform the activities constituting the violation of the protective order, specifically, that she intended to go to the property, and it was undisputed that she went to the property.

2. The defendant could not prevail on her claim that the criminal violation of protective order statute (§ 53a-223) was void for vagueness as applied to her because the language of the protective order, as explained to her by the trial court, did not provide adequate notice of what was prohibited; the terms of the protective order provided adequate notice that going to the property would constitute a violation of the order, the court's oral instruction to the defendant specifically warned her to avoid the victim's residence, the address of the property clearly was listed as the victim's address on the protective order, the language contained in the order required the defendant to stay away from the property even if the victim was not residing there, and the court's oral instructions did not alter the restrictions of the protective order in any way.

Argued December 8, 2020—officially released April 13, 2021

*Procedural History*

Information charging the defendant with the crime of criminal violation of a protective order, brought to the Superior Court in the judicial district of Stamford-Norwalk, geographical area number twenty, and tried to the court, *McLaughlin, J.*; judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*Stephan E. Seeger*, for the appellant (defendant).

*Sarah Hanna*, senior assistant state's attorney, with whom, on the brief were *Paul J. Ferencek*, state's attorney, and *Justina Moore*, assistant state's attorney, for the appellee (state).

*Opinion*

CRADLE, J. The defendant, Cheryl J., appeals from the judgment of the trial court finding her guilty of criminal violation of a protective order in violation of General Statutes § 53a-223. On appeal, the defendant claims that (1) the evidence before the trial court was insufficient to prove that she had the requisite intent to violate the protective order and (2) § 53a-223 is unconstitutionally vague as applied. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this decision. On May 17, 2016, the trial court, *Hon. Jack L. Grogins*, judge trial referee, issued a protective order against the defendant pursuant to General Statutes § 46b-38c (e).[1] The order identified the protected person as the defendant's former husband, "[M. J.]" and listed his home address and mailing address as "[R Street]." The protective order instructed the defendant to "not assault, threaten, abuse, harass, follow, interfere with, or stalk the protected person"; to "stay away from the home of the protected person and wherever the protected person shall reside"; and to "not contact the protected person in any manner, including by written, electronic or telephone contact, and [to] not contact the protected person's home, workplace or others with whom the contact would be likely to cause annoyance or alarm to the protected person." Upon issuing the protective order, the court reviewed the conditions with the defendant. The defendant does not dispute that she received a copy of the protective order issued by the court.

At the time the court issued the order, the defendant sought clarification regarding the order from the court. Judge Grogins specifically instructed the defendant that "as long as she stays away from the workplace of [M], from his residence, or any contact with him, she'll be in compliance" with the protective order. Defense counsel responded, "[t]hat's our understanding." Judge Grogins further advised the defendant "to stay away from the residence of [M], wherever it may be, *including the residence that's listed on the protective order.*" (Emphasis added).

M had obtained the R Street property through divorce proceedings with the defendant in February, 2016. At the time the protective order was issued, M was the sole owner of the R Street property. The defendant had a pending appeal challenging the award of the R Street property, which prohibited M from selling or otherwise disposing of this property without court permission. Although M spent several nights sleeping at the R Street property, he did not ultimately move into the R Street property. Instead, M hired a real estate agent to list the property for sale or for rent in August, 2016. The agent had known both the defendant and M for many years

and had represented them in real estate transactions in the past.

On September 22, 2016, the agent held an open house at the R Street property. After the open house, the agent closed the property and put a lockbox on the front door. Simultaneously, the defendant was travelling to pick up her mail at an address located near the R Street property. As the defendant was driving by R Street, she noticed the agent's car in the driveway and pulled up to the driveway. The defendant told the agent that she could not list or sell the R Street property because of the pending proceedings and court order relating to the property. The agent removed the lockbox and sent M a text message informing him of the exchange. On October 1, 2016, M notified the police that the defendant had violated the protective order based on her interaction with the agent at the R Street property. The police obtained an arrest warrant for violation of a protective order and served the warrant on the defendant on October 17, 2016.

The state charged the defendant by way of a long form information with one count of criminal violation of a protective order.[2] A two day court trial was held in May, 2019, before *McLaughlin, J.* At trial, the state presented evidence that the defendant had violated the protective order by going to the R Street property and additionally, by causing annoyance or alarm to M. After the state's case-in-chief, the defendant moved for a judgment of acquittal. The defendant argued that she did not have the requisite general intent to violate the protective order based on her adherence to Judge Grogins' instruction to stay away from M's residence, and her knowledge that M did not reside at the R Street property. Thus, the defendant argued that any violation of the order was based on a mistake and, therefore, she could not be found guilty of violating the protective order. The court denied the defendant's motion. Following the close of all of the evidence, the defendant once again moved for a judgment of acquittal based upon insufficient evidence. She argued that § 53a-223 was void for vagueness because Judge Grogins' oral instruction did not provide notice of what was prohibited by the protective order. The court rejected the defendant's arguments and found the defendant guilty of criminal violation of the protective order stating, "[b]ased on all of the evidence, in particular . . . the May 17th, 2016 protective order in this matter and . . . the transcript of Judge Grogins entering that protective order, and canvassing [the defendant] about the same, in addition to this court's assessment of the witnesses' credibility, the court finds [the defendant] guilty of criminal violation of the May 17th, 2016 protective order." This appeal followed.

I

The defendant first claims that the evidence was

insufficient to prove that she had the requisite intent to be convicted of criminal violation of a protective order. We disagree.

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a [two part] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . [I]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct." (Citation omitted; internal quotation marks omitted.) *State* v. *Carter*, 151 Conn. App. 527, 533, 95 A.3d 1201 (2014), appeal dismissed, 320 Conn. 564, 132 A.3d 729 (2016).

"[T]he [trier of fact] must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense . . . . [P]roof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the . . . verdict of guilty." (Citation omitted; internal quotation marks omitted.) Id.

"It is within the province of the [trier of fact] to draw reasonable and logical inferences from the facts proven. . . . The [trier of fact] may draw reasonable inferences based on other inferences drawn from the evidence presented. . . . [I]n viewing evidence which could yield contrary inferences, the [trier of fact] is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the [trier of fact's] function is to draw whatever inferences from evidence or facts established by the evidence it deems to be reasonable and logical. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the [trier of fact] are so unreasonable as to be unjustifiable." (Citations omitted; internal quotation marks omitted.) Id., 534.

Section 53a-223 (a) provides in relevant part that "[a] person is guilty of criminal violation of a protective order when an order . . . has been issued against such person, and such person violates such order." The defendant does not dispute the first element, that a

protective order had been issued against her. The defendant claims that the evidence was insufficient to prove that she had the requisite intent to violate the protective order. "[T]he violation of a protective order statute is not a specific intent crime." (Internal quotation marks omitted.) *State* v. *Opio-Oguta*, 153 Conn. App. 107, 119, 100 A.3d 461, cert. denied, 314 Conn. 945, 102 A.3d 1115 (2014). "All that is necessary is a general intent that one intend to perform the activities that constitute the violation." (Internal quotation marks omitted.) *State* v. *Binnette*, 86 Conn. App. 491, 497, 861 A.2d 1197 (2004), cert. denied, 273 Conn. 902, 868 A.2d 745 (2005).

In arguing that there was insufficient evidence to prove that she had the requisite intent to violate the protective order, the defendant argues that she had relied on the court's oral clarification of the protective order instructing her only that she must avoid M's residence, not that she was prohibited from going to the R Street property. She further argues that, because she knew that M did not reside there, she was under "an erroneous perception of the facts as they actually exist" based on the court's instruction, which "negate[s] the criminal nature" of her presence at the R Street property.[3] (Internal quotation marks omitted.)

The defendant's reliance on Judge Grogins' oral instruction to support her claim that she did not have the requisite intent to violate the protective order is misplaced. The state was not required to prove that the defendant specifically intended to violate a condition of the protective order. The state had the burden to prove only that she intended to perform the activities constituting the violation of the protective order, specifically, that she intended to go to the R Street property. It is undisputed that the defendant went to the R Street property, and the defendant herself testified that she intended to go to the property in order to speak to the agent. Because the plain language of the protective order prohibited the defendant from going to the R Street property, and the only requisite intent needed to find the defendant guilty of criminal violation of the protective order is intent to perform the activities that constitute the violation, we conclude that there was sufficient evidence before the trial court to find that the defendant violated the protective order.

II

The defendant next argues that the criminal violation of protective order statute is void for vagueness as applied to her because the language of the protective order, as explained to her by the court, did not provide adequate notice of what was prohibited. We are not persuaded.

"The determination of whether a statutory provision is unconstitutionally vague is a question of law over which we exercise de novo review. . . . In undertaking

such review, we are mindful that [a] statute is not void for vagueness unless it clearly and unequivocally is unconstitutional, making every presumption in favor of its validity. . . . To demonstrate that [a statute] is unconstitutionally vague as applied to [her], the [defendant] therefore must . . . demonstrate beyond a reasonable doubt that [she] had inadequate notice of what was prohibited or that [she was] the victim of arbitrary and discriminatory enforcement. . . . [T]he void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute . . . and the guarantee against standardless law enforcement. . . . If the meaning of a statute can be fairly ascertained a statute will not be void for vagueness since [m]any statutes will have some inherent vagueness, for [i]n most English words and phrases there lurk uncertainties." (Internal quotation marks omitted.) *State* v. *Legrand*, 129 Conn. App. 239, 269–70, 20 A.3d 52, cert. denied, 302 Conn. 912, 27 A.3d 371 (2011).

Section 53a-223 (a) provides in relevant part: "A person is guilty of criminal violation of a protective order when an order . . . has been issued against such person, and such person violates such order." We note that the defendant makes no claim that the statute is facially vague, but rather that it is vague as applied to her in these factual circumstances. In other words, the defendant does not argue that the language of § 53a-233 is unconstitutionally vague, but rather that the defendant relied on "a last instruction from the court, as only limiting her to avoiding [M's] residence, work and contact with him. . . . Consequently, in light of the language in the protective order as explained to her by the court, [the defendant] had inadequate notice of what was prohibited."

We conclude that the terms of the protective order issued in this case provided adequate notice that going to the R Street property would constitute a violation of the order. The court's oral instruction to the defendant specifically warned her to avoid M's residence. Although M was not permanently residing at R Street when the defendant went to the property, the protective order clearly prohibited the defendant from going to the R Street property "*and* wherever the protected person shall reside." (Emphasis added.) The R Street address clearly was listed as M's address on the protective order. The language contained in the protective order required the defendant to stay away from the R Street property even if M was not, in fact, residing there. The court's oral instructions did not alter the restrictions of the protective order in any way. If the defendant wanted permission to go the R Street property, she was obligated to file a motion to seek a modification of the order in court, not alter the terms of the protective order on her own.[4] Accordingly, the defendant's argument that she lacked adequate notice of the condition of the

protective order or that the statute is unconstitutionally vague as applied to her fails.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of domestic violence, we decline to identify the defendant, the victim, or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018); we decline to identify any party protected or sought to be protected under a protective order or a restraining order that was issued or applied for, or others through whom that party's identity may be ascertained.

[1] General Statutes § 46b-38c (e) provides in relevant part: "A protective order issued under this section may include provisions necessary to protect the victim from threats, harassment, injury or intimidation by the defendant, including, but not limited to, an order enjoining the defendant from (1) imposing any restraint upon the person or liberty of the victim, (2) threatening, harassing, assaulting, molesting or sexually assaulting the victim, or (3) entering the family dwelling or the dwelling of the victim. . . ."

[2] The state alleged that the defendant was in violation of General Statutes § 53a-223, which provides in relevant part: "(a) A person is guilty of criminal violation of a protective order when an order issued pursuant to subsection (e) of section 46b-38c . . . has been issued against such person, and such person violates such order. . . ."

[3] The parties, in their appellate briefs, also address whether the defendant violated the protective order by causing M annoyance or alarm. Because the information charges the defendant with only one count of criminal violation of a protective order and we agree with the trial court that the defendant violated the protective order by appearing at the R Street property, we decline to address the issue of whether or not the defendant caused M annoyance or alarm.

[4] See *State* v. *Wright*, 273 Conn. 418, 426, 870 A.2d 1039 (2005) ("[T]he defendant had no privilege to violate that order. If the defendant believed that the order did not comport with the statutory requirements of § 46b-38c (e), he had two lawful remedies available to him. He could have (1) sought to have the order modified or vacated by a judge of the Superior Court pursuant to Practice Book § 38-13; or (2) appealed the terms of the order to the Appellate Court in accordance with General Statutes § 54-63g." (Footnote omitted.))