******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# STATE OF CONNECTICUT *v.* ENRRIQUE H.*
## (SC 21125)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander, Dannehy and Bright, Js.

*Syllabus*

Pursuant to statute (§ 53a-217 (a) (4) (A)), a person is guilty of criminal possession of a firearm or ammunition when that person possesses a firearm or ammunition and knows that he or she is subject to a restraining or protective order "in a case involving the use, attempted use or threatened use of physical force against another person . . . ."

Convicted, on a conditional plea of nolo contendere, of criminal possession of a firearm or ammunition and criminal violation of a protective order, the defendant appealed. The defendant's conviction stemmed from two prior cases in which he had been charged with sexual assault in the fourth degree and risk of injury to a child in connection with his abuse of a minor family member. In each of those cases, the trial court issued a protective order requiring the defendant to surrender all of his firearms and ammunition. In the present case, the state alleged, inter alia, that the defendant had possessed firearms or ammunition in violation of those protective orders. On appeal, the defendant claimed, inter alia, that the trial court had improperly denied his motion to dismiss the criminal possession of a firearm or ammunition charge brought under § 53a-217 (a) (4) (A), contending that the protective orders that formed the basis for that charge were not issued "in a case involving the use, attempted use or threatened use of physical force" because such use of force is not an element of the underlying offense of fourth degree sexual assault or risk of injury to a child. *Held*:

The criminal possession of a firearm or ammunition charge brought under § 53a-217 (a) (4) (A) did not fail as a matter of law, this court having concluded that the underlying protective orders stemming from the prior fourth degree sexual assault and risk of injury to a child charges were issued "in a case involving" the use, attempted use or threatened use of physical force for purposes of that statute.

---

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2024); we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

The plain and unambiguous meaning of the phrase "a case involving," as used in § 53a-217 (a) (4) (A), is broadly inclusive of an entire proceeding, action, suit, or controversy, and does not, contrary to the defendant's contention, require that the protective order be issued in a case in which the actual, attempted, or threatened use of physical force is an essential element of a charged offense, or of a claim or defense.

In the present case, because the protective orders were issued in cases involving the prosecution of a sex offense, this court looked to the statutory (§ 53a-65 (7) (B)) definition of "use of force" in the portion of the Penal Code setting forth the definitions applicable to sex offenses and concluded that the "case involving" element of § 53a-217 (a) (4) (A) can be satisfied when the defendant knows that he is subject to a protective order that was issued in a prior sex offense prosecution in which the actual, attempted, or threatened use of actual physical force or violence or superior physical strength against the victim was present within any aspect of the prosecution.

The defendant could not prevail on his alternative, unpreserved claim that § 53a-217 (a) (4) (A) was unconstitutionally vague as applied to him, the defendant having failed to demonstrate the existence of a constitutional violation under the third prong of the test set forth in *State* v. *Golding* (213 Conn. 233), as modified by *In re Yasiel R.* (317 Conn. 773).

Even if neither of the courts that issued the protective orders memorialized any factual findings regarding the defendant's actual, attempted, or threatened use of physical force, § 53a-217 (a) (4) (A) was not unconstitutionally vague as applied to the defendant because that statute generally provides sufficient guidance regarding how the state, in a prosecution for criminal possession of a firearm or ammunition, may prove that a prior criminal case involved such use of physical force, regardless of whether the court that issued the protective order created a robust record to facilitate proof of this element of § 53a-217 (a) (4) (A).

The defendant's claim that the charges of criminal possession of a firearm or ammunition and criminal violation of a protective order failed as a matter of law insofar as the protective orders on which they were based violated the second amendment to the United States constitution was an impermissible collateral attack on the validity of the protective orders themselves, rather than a challenge to the constitutionality of any criminal statute, and, therefore, the defendant's claim was precluded by the collateral bar rule.

Moreover, to the extent the defendant claimed that he could not have challenged the underlying protective orders on second amendment grounds when the orders were issued because those orders predated the release of certain relevant United States Supreme Court decisions, that claim was unavailing, as there had been case law since at least 2010 recognizing a defendant's second amendment right to keep and bear arms, and the more

recent decisions on which the defendant relied did not announce any new rights.

Argued September 15—officially released December 30, 2025

*Procedural History*

Information charging the defendant with two counts each of the crimes of criminal possession of a firearm or ammunition and criminal violation of a protective order and one count of the crime of making a false statement, brought to the Superior Court in the judicial district of New Haven, geographical area number twenty-three, and transferred to the judicial district of New London, where the court, *S. Murphy, J.*, denied the defendant's motion to dismiss the charges of criminal possession of a firearm or ammunition and criminal violation of a protective order; thereafter, the defendant was presented to the court, *S. Murphy, J.*, on a conditional plea of nolo contendere to one count each of criminal possession of a firearm or ammunition and criminal violation of a protective order; judgment of guilty in accordance with the plea; subsequently, the state entered a nolle prosequi as to one count each of criminal possession of a firearm or ammunition, criminal violation of a protective order, and making a false statement; thereafter, the defendant appealed. *Affirmed.*

*Lisa J. Steele*, assigned counsel, for the appellant (defendant).

*Olivia M. Hally*, deputy assistant state's attorney, with whom, on the brief, were *Paul J. Narducci*, state's attorney, and *Theresa Ferryman*, senior assistant state's attorney, for the appellee (state).

*Opinion*

McDONALD, J. This appeal requires us to determine the circumstances under which a defendant may be found guilty of violating a protective order and of criminal possession of a firearm or ammunition. Specifically, we must

determine, among other things, the scope of the phrase "a case involving" the use, attempted use, or threatened use of physical force, as used in General Statutes § 53a-217 (a) (4) (A). The defendant, Enrrique H., appeals from the judgment of conviction, rendered after a conditional plea of nolo contendere, of one count of criminal possession of a firearm or ammunition while subject to a protective order in violation of § 53a-217 (a) (4) (A), and one count of criminal violation of a protective order in violation of General Statutes § 53a-223. He argues that the trial court had improperly denied his motion to dismiss.

The defendant first claims that the criminal possession charge fails as a matter of law because his two preexisting protective orders were not issued "in a case involving the use, attempted use or threatened use of physical force against another person," as § 53a-217 (a) (4) (A) requires. In support of this claim, he argues that, because his two protective orders arose from the alleged violations of statutes that did not include the actual, attempted, or threatened use of physical force as an element of the crimes, neither prosecution qualified as "a case involving" this subject. In the alternative, he claims that § 53a-217 (a) (4) (A) is unconstitutionally vague as applied to him because there is no evidence that the courts that issued the protective orders made any factual findings regarding the actual, attempted, or threatened use of physical force. Finally, he claims that the criminal possession of a firearm or ammunition and criminal violation of a protective order charges fail as a matter of law because the underlying protective orders on which they are predicated violate the second amendment to the United States constitution. We disagree with these claims and affirm the judgment of conviction.

The following facts, which are either undisputed or reasonably could have been found by the trial court, are relevant to this appeal. In October, 2019, the defendant was arrested and charged with four counts of

sexual assault in the fourth degree and four counts of risk of injury to a child, arising from allegations of sexual assault of a minor female family member. At the defendant's arraignment, the trial court issued a protective order that required the defendant to surrender all firearms and ammunition. Subsequently, in January, 2021, the defendant was again arrested and charged with two counts of sexual assault in the fourth degree and two counts of risk of injury to a child, arising from similar allegations concerning the same minor family member. At arraignment on the subsequent charges, the trial court again issued a protective order that mandated that the defendant surrender all firearms and ammunition.

Thereafter, in February, 2022, the defendant was arrested a third time and charged with two counts of criminal violation of a protective order in violation of § 53a-223 and two counts of criminal possession of a firearm or ammunition in violation of § 53a-217 (a) (4) (A).[1] Section 53a-223 criminalizes the violation of certain classes of protective orders. Section 53a-217 (a) (4) (A) criminalizes the possession of firearms, ammunition, or electronic defense weapons with knowledge that one is subject to an active protective order that was issued "in a case involving the use, attempted use or threatened use of physical force against another person . . . ."

The defendant moved to dismiss the 2022 charges. He argued that his underlying charges of sexual assault in the fourth degree and risk of injury to a child did not include the actual, attempted, or threatened use of physical force as an element of the crimes, rendering neither of those prior prosecutions "a case involving"

---

[1] The defendant was also charged with one count of making a false statement in violation of General Statutes § 53a-157b. The defendant did not move to dismiss the false statement charge. The state subsequently entered a nolle prosequi as to this charge, and it is not relevant to the issues that the defendant raises on appeal.

such use of physical force, as required by § 53a-217 (a) (4) (A). He also contended that all four charges violate the second amendment to the United States constitution. The trial court denied his motion to dismiss. The defendant thereafter entered a conditional plea of nolo contendere to one count each of criminal possession of a firearm or ammunition and criminal violation of a protective order and appealed to the Appellate Court.[2] This court subsequently transferred the appeal to itself pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

"Because a motion to dismiss effectively challenges the jurisdiction of the court, asserting that the state, as a matter of law and fact, cannot state a proper cause of action against the defendant, our review of the [trial] court's legal conclusions and resulting denial of the defendant's motion to dismiss is de novo. . . . Factual findings underlying the court's decision, however, will not be disturbed unless they are clearly erroneous." (Citation omitted; internal quotation marks omitted.) *State* v. *Samuel M.*, 323 Conn. 785, 794–95, 151 A.3d 815 (2016).

I

We first consider the defendant's claim that the criminal possession of a firearm or ammunition charge fails as a matter of law because the underlying protective orders were not issued "in a case involving the use, attempted use or threatened use of physical force against another person," as required by § 53a-217 (a) (4) (A). The defendant argues that this element of § 53a-217 (a) (4) (A) should be narrowly construed and is satisfied only when a preexisting protective order was issued in a case that included the actual, attempted, or

_____

[2] The state entered a nolle prosequi as to the remaining charges, including one count each of criminal possession of a firearm or ammunition and criminal violation of a protective order. See also footnote 1 of this opinion.

threatened use of physical force as an essential element of a charged offense and that the statutes governing the charges giving rise to his protective orders did not contain any such element. The state contends in response that "a case involving" more broadly includes not only the essential elements of a charged offense, but also an entire criminal proceeding.

Whether the meaning of the phrase "a case involving" is limited to the essential elements of a charged crime or includes an entire criminal proceeding is a question of statutory interpretation over which we exercise plenary review. See, e.g., *Seramonte Associates, LLC* v. *Hamden*, 345 Conn. 76, 83, 282 A.3d 1253 (2022). Accordingly, we review § 53a-217 (a) (4) (A) pursuant to General Statutes § 1-2z and our familiar principles of statutory interpretation. See, e.g., *Sena* v. *American Medical Response of Connecticut, Inc.*, 333 Conn. 30, 45–46, 213 A.3d 1110 (2019).

We begin with the text of the statute. Section 53a-217 (a) provides in relevant part that "[a] person is guilty of criminal possession of a firearm, ammunition or an electronic defense weapon when such person possesses a firearm, ammunition or an electronic defense weapon and . . . (4) knows that such person is subject to (A) a restraining or protective order of a court of this state that has been issued against such person, after notice has been provided to such person, *in a case involving the use, attempted use or threatened use of physical force against another person . . . .*" (Emphasis added.) The terms "case" and "involving" are not statutorily defined. "When a term is not defined in a statute, we begin with the assumption that the legislature intended the word to carry its ordinary meaning, as evidenced in dictionaries in print at the time the statute was enacted." *Maturo* v. *State Employees Retirement Commission*, 326 Conn. 160, 176, 162 A.3d 706 (2017). Because the legislature added the relevant

statutory language in 2001; see, e.g., *State* v. *Bernacki*, 307 Conn. 1, 28, 52 A.3d 605 (2012) ("[t]he legislature enacted [what is now] § 53a-217 (a) [4] (A) as part of Public Acts 2001, No. 01-130, § 15"), cert. denied, 569 U.S. 918, 133 S. Ct. 1804, 185 L. Ed. 2d 811 (2013);[3] we look to prevailing dictionary definitions of "case" and "involve" that existed around that time.

At that time, Black's Law Dictionary defined "case" as "[a] proceeding, action, suit, or controversy at law or in equity . . . ." Black's Law Dictionary (7th Ed. 1999) p. 206. The relevant definition of "case" in Merriam-Webster's Collegiate Dictionary was similarly "a suit or action in law or equity . . . ." Merriam-Webster's Collegiate Dictionary (10th Ed. 1993) p. 176. Although absent in Black's Law Dictionary, the relevant definition of "involve" in Merriam-Webster's Collegiate Dictionary was "to have within or as part of itself . . . ." Id., p. 617. An illustrative synonym for this definition of "involve" is the word "include"; id.; which the same dictionary defined as "to take in or comprise as a part of a whole . . . ." Id., p. 588.[4]

We conclude that the plain and unambiguous meaning of the phrase "a case involving" as used in § 53a-217 (a) (4) (A) is broadly inclusive of an entire proceeding, action, suit, or controversy and that it is not limited to an analysis of the essential elements of the underlying charged offenses. The breadth of this resulting definition does not change the fact that the phrase is plain and unambiguous. "[I]t is a well settled principle of

[3] Although originally numbered § 53a-217 (a) (3) (A), the statutory provision at issue in this appeal was renumbered as § 53a-217 (a) (4) (A) by No. 13-3, § 44, of the 2013 Public Acts.

[4] Two other definitions of "involve" in Merriam-Webster's Collegiate Dictionary were "to relate closely" and "to require as a necessary accompaniment . . . ." Merriam-Webster's Collegiate Dictionary, supra, p. 617. The legislature's usage of "involve" in § 53a-217 (a) (4) (A) does not align with either of these definitions.

statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so." (Citation omitted.) *Scholastic Book Clubs, Inc.* v. *Commissioner of Revenue Services*, 304 Conn. 204, 219, 38 A.3d 1183, cert. denied, 568 U.S. 940, 133 S. Ct. 425, 184 L. Ed. 2d 255 (2012). No limiting term in § 53a-217 (a) (4) (A) confines the otherwise broad scope of the phrase "a case involving" to the actual legal elements of a charged crime, or of a claim or defense.

This conclusion follows not only from the plain and unambiguous text of § 53a-217 (a) (4) (A), but also from its relationship to other statutes. Our legislature has used narrower language when it wished to refer specifically to the elements of a charged offense. For example, in *State* v. *Moore*, 352 Conn. 912, 336 A.3d 1222 (2025), we recently "conclude[d] that the phrase 'essential element' unambiguously means the basic and necessary parts of the offense the state must establish to obtain a conviction." Id., 928. We observed in *Moore* that "the legislature has used 'essential elements' in at least seventeen statutes—mostly criminal in nature, but not exclusively . . . ." Id., 924. Three of those statutes are in the same chapter of the Penal Code as § 53a-217 (a) (4) (A). See, e.g., id. (citing General Statutes §§ 53a-40 (a) and (b), 53a-40d (a) and 53a-40f (a)); see also, e.g., *State* v. *King*, 346 Conn. 238, 247, 288 A.3d 995 (2023). Had the legislature intended to refer only to the elements of an offense in § 53a-217 (a) (4) (A), it would have said so. See, e.g., *Health Body World Supply, Inc.* v. *Wang*, 353 Conn. 296, 317, 342 A.3d 987 (2025) ("we assume that the legislature has a different intent when it uses different terms in the same statutory scheme" (internal quotation marks omitted)).

Furthermore, there are several other statutes in which the legislature has used the broader phrase "a case involving." For example, although General Statutes

§ 54-82t is not in the same chapter of the Penal Code as § 53a-217 (a) (4) (A), § 54-82t (b) refers to "a witness in *a case involving* organized crime, gang activities or drug trafficking or involving a high degree of risk to the witness." (Emphasis added.) The phrase "a case involving" could not plausibly mean that this range of subject matter must comprise an element of a charged offense. Given these comparator statutes, we cannot ignore the legislature's choice to use the relatively broad phrase "a case involving" in § 53a-217 (a) (4) (A) rather than the narrow phrase "essential elements" that is used in the many statutes discussed in *Moore*. See *State* v. *Moore*, supra, 352 Conn. 924.

Indeed, in *Moore*, we maintained a similar distinction between the elements of a charged crime and other aspects of a case. The state argued in *Moore* that the phrase " 'essential element' " also "includ[es] the particular facts alleged to establish" the elements of a charged offense. Id., 925. The state, much like the defendant here, sought to blur the dividing line between the elements of a charged offense and other aspects of a case. Just as we declined to broaden the phrase " 'essential element' " beyond its plain meaning to include other aspects of a case in *Moore*; id., 928; here, we decline to narrow the phrase "a case involving" to encompass only the elements of a charged offense. Accordingly, we conclude that the only plausible meaning of the phrase "a case involving," as used in § 53a-217 (a) (4) (A), requires consideration of the entirety of a prior proceeding.

As applied to the present case, § 53a-217 (a) (4) (A) requires that an active protective order be issued "in a case involving the use, attempted use or threatened use of physical force against another person . . . ." The subject that a prior case must involve, then, is the use, attempted use, or threatened use of physical force. Here, the defendant's protective orders were issued in

sex offense prosecutions. When the previous "case" used to satisfy § 53a-217 (a) (4) (A) is a sex offense prosecution, the "use of physical force" is established through the corresponding definition of "use of force" in General Statutes § 53a-65 (7). In this case, the relevant definition of "use of force" is the "use of actual physical force or violence or superior physical strength against the victim." General Statutes § 53a-65 (7) (B).

Accordingly, we hold that this element of § 53a-217 (a) (4) (A) can be satisfied when the defendant knows that he is subject to a protective order that was issued in a prior sex offense prosecution in which the actual, attempted, or threatened use of actual physical force or violence or superior physical strength against the victim was present within any aspect of the prosecution.

## II

We next consider the defendant's alternative claim that § 53a-217 (a) (4) (A) is unconstitutionally vague as applied to him. He contends that, because there is no evidence that either of the courts that issued the protective orders made factual findings that the underlying criminal cases involved the actual, attempted, or threatened use of physical force, he was not on notice that he would violate § 53a-217 (a) (4) (A) by possessing a firearm or ammunition while those protective orders were active. The state responds that the defendant was on notice that possessing a firearm or ammunition would be unlawful due to the express prohibition of this conduct in his protective orders.

The defendant concedes that he did not preserve this constitutional claim and seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). It is well settled that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are

met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; internal quotation marks omitted.) *State* v. *Holley*, 327 Conn. 576, 590 n.8, 175 A.3d 514 (2018); see *State* v. *Golding*, supra, 239–40; see also *In re Yasiel R.*, supra, 781 (modifying third prong of *Golding*).

The state first contends that the record is inadequate to review the defendant's vagueness challenge, and, therefore, his claim fails under the first prong of *Golding*. Specifically, the state asserts that, because the record does not include the protective orders to which the defendant was subject, or transcripts of his arraignments, the defendant's vagueness claim is unreviewable. The defendant argues that it would be unfair to conclude that the record is inadequate to review his claim when he did everything that he could to ensure an adequate record. Specifically, the defendant moved the Appellate Court to supplement the record on appeal to include materials from his prior prosecutions, which comprised the factual basis for his protective orders. The state opposed this motion. After the Appellate Court issued an order denying the motion, the defendant sought reconsideration of that order. The state opposed the defendant's motion for reconsideration, and the Appellate Court denied it. The defendant turned to his remaining recourse, filing a motion for rectification of the record with the trial court. The state took no position on this final motion, and the trial court denied it.[5] Because we conclude that the resolution of

[5] The defendant did not seek review in the Appellate Court of the denial of his motion for rectification of the record.

the defendant's claim does not depend on the language of the protective orders at issue or the factual findings made by the courts issuing those orders, the record is adequate to review the defendant's claim. We therefore reject the state's argument, and, because there is no dispute that the claim is of constitutional magnitude, we consider the merits of the defendant's vagueness claim. See, e.g., *In re Vada V.*, 343 Conn. 730, 741, 275 A.3d 1172 (2022) ("[t]he first two steps in the *Golding* analysis address the reviewability of the claim, [whereas] the last two steps involve the merits of the claim" (internal quotation marks omitted)).

"The determination of whether a statutory provision is unconstitutionally vague is a question of law over which we exercise de novo review." *State* v. *Winot*, 294 Conn. 753, 758–59, 988 A.2d 188 (2010). "In undertaking such review, we are mindful that [a] statute is not void for vagueness unless it clearly and unequivocally is unconstitutional, making every presumption in favor of its validity." (Internal quotation marks omitted.) Id., 759.

"To prevent arbitrary and discriminatory enforcement, 'laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to [police officers], judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.' . . . *Grayned* v. *Rockford*, 408 U.S. 104, 108–109, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972). '[A] legislature [must] establish minimal guidelines to govern law enforcement. . . . [When] the legislature fails to provide such minimal guidelines, a criminal statute may permit a standardless sweep [that] allows [police officers], prosecutors, and juries to pursue their personal predilections.' . . . *Kolender* v. *Lawson*, 461 U.S. 352, 358, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983)."

*State* v. *Lori T.*, 345 Conn. 44, 68–69, 282 A.3d 1233 (2022).

"As a practical matter, a court analyzing an as-applied vagueness challenge may determine that the statute generally provides sufficient guidance to eliminate the threat of arbitrary enforcement without analyzing more specifically whether the particular enforcement was guided by adequate standards. In fact, it is the better (and perhaps more logical) practice to determine first whether the statute provides such general guidance, given that the [United States] Supreme Court has indicated that the more important aspect of the vagueness doctrine is the requirement that a legislature establish minimal guidelines to govern law enforcement. . . . If a court determines that a statute provides sufficient guidelines to eliminate generally the risk of arbitrary enforcement, that finding concludes the inquiry.

"[When] a statute provides insufficient general guidance, an as-applied vagueness challenge may nonetheless fail if the statute's meaning has a clear core. . . . In that case the inquiry will involve determining whether the conduct at issue falls so squarely in the core of what is prohibited by the law that there is no substantial concern about arbitrary enforcement because no reasonable enforcing officer could doubt the law's application in the circumstances." (Internal quotation marks omitted.) Id., 69.

We conclude that, even if neither of the trial courts that issued the protective orders in the prior criminal cases memorialized any factual findings regarding the actual, attempted, or threatened use of physical force, § 53a-217 (a) (4) (A) is not unconstitutionally vague as applied to the defendant because it "generally provides sufficient guidance to eliminate the threat of arbitrary enforcement," which "concludes [our] inquiry." (Internal quotation marks omitted.) Id. Section 53a-217 (a)

(4) (A) provides sufficient guidance regarding how the state, in a prosecution for criminal possession of a firearm or ammunition, may prove that a prior case involved the actual, attempted, or threatened use of physical force—even if the court that issued a protective order in the prior case did not create a robust record for use in proving or disproving this element. Section 53a-217 (a) (4) requires that a defendant "knows that [he] is subject to (A) a restraining or protective order of a court of this state that has been issued against [him], after notice has been provided to such [defendant], in a case involving the use, attempted use or threatened use of physical force against another person . . . ." As previously discussed, this element of § 53a-217 (a) (4) (A) can be satisfied when the defendant knows that he is subject to a protective order that was issued in a previous sex offense prosecution in which the actual, attempted, or threatened use of actual physical force or violence or superior physical strength against the victim was present within any aspect of the prosecution. An issuing court's silence regarding the defendant's use of physical force in his prior cases does not undercut the sufficiency of the statute's guidance regarding what the state must prove to secure a conviction on this standalone charge.

Consideration of how § 53a-217 (a) (4) (A) would have applied to the defendant's alleged conduct had this case proceeded to trial illustrates that the statutory provision is not unconstitutionally vague as applied to him. To obtain a conviction under § 53a-217 (a) (4) (A), the state would have had to prove beyond a reasonable doubt that, when the defendant possessed the firearms or ammunition, he knew that the actual, attempted, or threatened use of actual physical force or violence or superior physical strength against the victim was present within any aspect of his previous sex offense prosecutions in which the active protective orders were

issued. See General Statutes § 53a-217 (a) (4) (A); see also General Statutes § 53a-65 (7) (B). To prove this element of a charge for criminal possession of a firearm or ammunition, the state would have had to present evidence regarding the factual circumstances underlying the prosecutions in which the defendant's protective orders were issued.

The state could have presented this evidence had this case proceeded to trial. The defendant's two previous prosecutions each included multiple charges of sexual assault in the fourth degree and of risk of injury to a child. All of those charges arose from the alleged sexual assault and risk of injury to the same minor family member of the defendant. At a trial of the § 53a-217 (a) (4) (A) charges, the state in this action could have presented evidence that the defendant—in allegedly sexually assaulting and risking injury to a minor female family member over a period of years—knew that the charged conduct involved the use, attempted use, or threatened use of actual physical force or violence or superior physical strength against the victim. This factual showing is an element of the § 53a-217 (a) (4) (A) charges, no matter the lack of a factual record in the previous proceedings. The fact that the state did not have the opportunity to marshal relevant evidence in this case is merely a byproduct of the stage at which the litigation in the trial court ended. Given the defendant's plea, the state had no occasion to introduce the evidence necessary to satisfy this element of § 53a-217 (a) (4) (A).

We do not opine on whether the state would have ultimately proven the defendant's knowledge of these facts beyond a reasonable doubt at trial. This illustration merely demonstrates that this element of a § 53a-217 (a) (4) (A) criminal possession charge is an ascertainable standard that "generally provides sufficient guidance to eliminate the threat of arbitrary enforcement,"

which "concludes the inquiry" regarding the defendant's vagueness challenge. (Internal quotation marks omitted.) *State* v. *Lori T.*, supra, 345 Conn. 69. The defendant's claim therefore fails under the third prong of *Golding*.

### III

Finally, the defendant claims that the charges of criminal possession of a firearm or ammunition and criminal violation of a protective order fail as a matter of law because the protective orders that were issued in the underlying proceedings violate the second amendment to the United States constitution. The state argues that the defendant cannot challenge the validity of the protective orders he was subject to in a collateral proceeding. The defendant counters that he could not have challenged the constitutionality of the protective orders when they were issued because favorable case law was available to him only after the fact. We conclude that the defendant's second amendment claim nonetheless fails because it is subject to the collateral bar rule.

We have previously held that attacking the validity of a protective order is not a cognizable defense to a criminal charge in a collateral criminal proceeding. See, e.g., *State* v. *Wright*, 273 Conn. 418, 424, 426, 870 A.2d 1039 (2005). "[A]n order issued by a court of competent jurisdiction must be obeyed by the parties until it is reversed by orderly and proper proceedings. . . . [A] party has a duty to obey a court order however erroneous the action of the court may be . . . . [T]here is no privilege to disobey a court's order because the alleged contemnor believes that it is invalid. . . . [T]his doctrine, which is commonly known as the collateral bar rule, is justified on the ground that it advances important societal interests in an orderly system of government, respect for the judicial process and the rule of law, and the preservation of civil order. . . . [T]he collateral bar

rule also applies when a defendant seeks to attack the validity of a court order in a criminal proceeding." (Citations omitted; internal quotation marks omitted.) Id., 425–26.

In *Wright*, we applied the collateral bar rule to a defendant's sixth and fourteenth amendment challenges to a preexisting protective order. See id., 432–34. We held that even a constitutional challenge to a prior court order in a collateral proceeding is barred by the collateral bar rule. See id., 433. Specifically, we concluded that "[t]he fact that this claim is couched in constitutional principles does not render it exempt from the collateral bar rule. That doctrine applies not only when a defendant challenges an order on the basis of factual error but also when he contends that the order is invalid because its issuance does not comport with constitutional law." Id.; see also, e.g., id., 433–34 (citing cases).

The collateral bar rule applies to the defendant's second amendment claim because he challenges the validity of the orders themselves, which were issued by courts of competent jurisdiction. In both his primary brief and his reply brief, the defendant makes unmistakably clear that his second amendment claim challenges the constitutionality of the protective orders themselves—not the constitutionality of any criminal statute. For example, "[the defendant] . . . asks this court to consider what findings a trial court must expressly make in order to deprive a defendant of his second amendment rights *in a protective order*." (Emphasis added.) The defendant further argues that "[t]he state has failed [to satisfy] its burden of proving that *the* [*protective*] *orders* in this case are constitutional." (Emphasis added.) The defendant also contends that his "counsel has been unable to find any case [in which] the collateral bar rule was invoked to prohibit a defendant from *challenging a restraining order* as unconsti-

tutional . . . . Nevertheless, the state argues that . . . [the defendant] cannot *challenge the validity of a protective order* on constitutional principles in a prosecution for violating that order."[6] (Citations omitted; emphasis added.) Finally, the defendant plainly states that he "challenge[s] the constitutionality of [his] protective orders . . . ."

This argument is an impermissible collateral attack on the orders of the issuing courts. "If the defendant believed that the order did not comport with the statutory requirements of [General Statutes] § 46b-38c (e), he had two lawful remedies available to him. He could have: (1) sought to have the order modified or vacated by a judge of the Superior Court pursuant to Practice Book § 38-13; or (2) appealed the terms of the order to the Appellate Court in accordance with General Statutes § 54-63g. Having failed to pursue either remedy, the defendant may not seek to avoid his conviction for violating that order by challenging the factual basis of its issuance." (Footnotes omitted.) *State* v. *Wright*, supra, 273 Conn. 426–27. The defendant also could have challenged the protective orders through a hearing pursuant to *State* v. *Fernando A.*, 294 Conn. 1, 7–8, 25–27, 30, 981 A.2d 427 (2009). When a trial court issues a

---

[6] The defendant cites the recent second amendment holding in *United States* v. *Rahimi*, 602 U.S. 680, 690, 144 S. Ct. 1889, 219 L. Ed. 2d 351 (2024), noting that "there is no indication that the [United States] Supreme Court considered [a defendant] collaterally barred from raising a constitutional challenge to [a protective] order in a prosecution for violating it." But, unlike the defendant in the present case, who explicitly challenges the validity of his protective orders in a collateral proceeding, the defendant in *Rahimi* presented a facial challenge to a provision in a federal criminal statute— the analogue of § 53a-217 (a) (4) (A). See *United States* v. *Rahimi*, supra, 693 ("[the defendant] challenges [18 U.S.C. §] 922 (g) (8) on its face"). The defendant misconstrues *Rahimi* as "[upholding] the constitutionality of some protective orders" rather than as upholding the facial constitutionality of a federal criminal statute. Had the defendant challenged as unconstitutional either of the criminal statutes at issue, this case would more closely resemble *Rahimi*.

criminal protective order at a defendant's arraignment, "the . . . court is required to hold, at the defendant's request . . . a subsequent hearing within a reasonable period of time [at which] the state will be required to prove the continued necessity of that order by a fair preponderance of the evidence, which may include reliable hearsay, and the defendant will have the opportunity to proffer relevant evidence to counter the state's case in support of the criminal protective order through his own testimony or that of other witnesses." Id., 30. The defendant pursued none of these options and cannot now challenge the validity of the protective orders that were issued in the underlying proceedings.

Addressing the collateral bar rule itself, the defendant contends that he could not have mounted a second amendment challenge to these protective orders when they were issued because they predated two watershed second amendment decisions. He argues that, because "the legal authority necessary to challenge the constitutionality of a protective [order] did not exist at the time of his arrest, [his] criminal case is the appropriate forum to resolve his challenge."

The second amendment authorities that postdate the defendant's protective orders are the United States Supreme Court's recent decisions in *New York State Rifle & Pistol Assn., Inc.* v. *Bruen*, 597 U.S. 1, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022), and *United States* v. *Rahimi*, 602 U.S. 680, 144 S. Ct. 1889, 219 L. Ed. 2d 351 (2024). *Bruen* established a standard of review when assessing the constitutionality of government restrictions on the right to keep and bear arms. See *New York State Rifle & Pistol Assn., Inc.* v. *Bruen*, supra, 17, 24. Specifically, the court explained that, "[o]nly if a firearm regulation is consistent with this [n]ation's historical tradition may a court conclude that the individual's conduct falls outside the [s]econd [a]mendment's unqualified command." (Internal quotation marks omitted.) Id.,

17. Subsequently, *Rahimi* applied that standard of review in a facial challenge to a federal criminal statute that prohibits individuals from possessing firearms when they are subject to certain restraining orders. See *United States* v. *Rahimi*, supra, 691–93; see also id., 693 ("[the defendant] challenges [18 U.S.C. §] 922 (g) (8) on its face"). The United States Supreme Court explained in *Rahimi* that, "[w]hen a restraining order contains a finding that an individual poses a credible threat to the physical safety of an intimate partner, that individual may—consistent with the [s]econd [a]mendment—be banned from possessing firearms while the order is in effect." Id., 690.

We are not persuaded by the defendant's argument that his second amendment challenge lacked basis prior to the United States Supreme Court's decisions in *Bruen* and *Rahimi*. Those cases established frameworks for determining when a government action violates an individual's second amendment right, but they did not announce the right itself. Defendants in Connecticut have been aware of case law recognizing their second amendment right to keep and bear arms since at least 2010. See *McDonald* v. *Chicago*, 561 U.S. 742, 750, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010) ("the [s]econd [a]mendment right [to keep and bear arms] is fully applicable to the [s]tates"); *District of Columbia* v. *Heller*, 554 U.S. 570, 622, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008) ("the [s]econd [a]mendment confers an individual right to keep and bear arms"). Because of *McDonald* and *Heller*, defendants in Connecticut have been able to challenge protective orders on the ground that they violate the second amendment since well before *Bruen* and *Rahimi* were decided. Indeed, some criminal defendants have done so. See, e.g., *State* v. *Maietta*, Superior Court, judicial district of New Britain, geographical area number fifteen, Docket No. CR-12-0265964 (April 28, 2015) (60 Conn. L. Rptr. 287, 287) ("The defendant asserts that

the standing criminal protective order which prohibited him from possessing any firearms violates his [s]econd [a]mendment right to bear arms. . . . Whatever the merits of the defendant's constitutional claim, and they may very well be substantial, he is prevented from asserting that claim in this criminal prosecution due to the collateral bar rule."). The timing of *Bruen* and *Rahimi* does not change that the defendant's constitutional challenges to his protective orders are barred in this collateral proceeding.[7]

## CONCLUSION

In sum, we conclude that the "case involving" element of § 53a-217 (a) (4) (A) can be satisfied when the defendant knows that the actual, attempted, or threatened use of actual physical force or violence or superior physical strength against the victim was present within any aspect of a previous sex offense prosecution in which an active protective order was issued. We also conclude that this standard is not unconstitutionally vague as applied to the defendant. Finally, we reject the defendant's second amendment challenge to the protective orders that were issued in the underlying proceedings because it is subject to the collateral bar rule.[8]

The judgment is affirmed.

In this opinion the other justices concurred.

---

[7] To the extent that the defendant claims that the criminal statutes themselves are unconstitutional, this claim is inadequately briefed. "Claims that are inadequately briefed generally are considered abandoned." *Grimm* v. *Grimm*, 276 Conn. 377, 393, 886 A.2d 391 (2005), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006). The defendant does not provide any independent analysis as to why either specific criminal statute would violate the second amendment.

[8] All three claims relate to the factual circumstances surrounding the issuance of protective orders. Going forward, it would be prudent for trial courts issuing protective orders to specifically articulate their factual findings in those proceedings, whether in an order or by completing a form. Similar to the requirement that an issuing court provide the defendant with

the actual conditions of a protective order, an issuing court should also communicate to the defendant (1) whether the factual circumstances of the case satisfy the "case involving" element of § 53a-217 (a) (4) (A), and (2) whether its factual findings would justify a prohibition on firearm or ammunition possession under the then prevailing second amendment standard.